**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NIKENSON JEAN MATHURIN. | Criminal No. 24-432 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Nikenson Jean Mathurin's ("Defendant") Motion for a New Trial (the "Motion") pursuant to Federal Rule of Criminal Procedure 33(a). (ECF No. 78.) The United States of America (the "Government") opposed (ECF No. 82), and Defendant replied (ECF No. 84). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which is applicable to criminal cases under Local Civil Rule 1.1. For the reasons stated below, the Court denies the Motion.

## I. PROCEDURAL BACKGROUND

On July 2, 2024, a federal grand jury returned a four-count Indictment charging Defendant with three counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. § 1957. (Indictment, ECF No. 16.) The Indictment charged Defendant with a scheme to defraud a financial institution and the Small Business Administration (the "SBA") to obtain millions of dollars of federal COVID-19 emergency relief money by means of materially false and fraudulent pretenses, representations, and promises, and with laundering the proceeds. (*Id.* ¶¶ 2, 4(b), 7.)

Defendant was subsequently tried before a jury over four days from May 18, 2026, through May 21, 2026. (Minute Entries, ECF Nos. 60, 61, 65, 67.) The Government's evidence at trial consisted of testimony from six witnesses, including summary witness Special Agent Michael Pohar ("Pohar") of the Internal Revenue Service-Criminal Investigation ("IRS-CI"), as well as voluminous records, including loan applications, bank records, tax forms, email correspondence, subscriber records, and summary charts. (*See generally* Trial Tr., ECF Nos. 63, 64, 66, 68.) The Government's theory of the case was that Defendant submitted fraudulent COVID-19 relief applications under the Paycheck Protection Program (the "PPP") and the Economic Injury Disaster Loan Program (the "EIDL") for entities that Defendant controlled, including Innovation Partners Plus and Opulence Motor Group, and that he caused the loan proceeds to be wired to accounts that he controlled. (Trial Tr. 19:3-21:4, 416:13-24, 430:19-22.)

During Pohar's testimony, the Government introduced Exhibit 800, Summary Charts ("Summary Charts"), which were prepared based on various investigative records and were admitted without objection. (*Id.* at 162:1-10; Summary Charts, Gov't's Ex. 800.) Page ten of the Summary Charts included IP addresses which were said to have been captured on the loan submissions, juxtaposed with the IP addresses said to have been associated with Defendant's iPhone. (Summary Charts 10; Trial Tr. 160:8-162:4, 284:12-288:6.)

At the close of evidence, Defense Counsel moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. (Trial Tr. 377:24-378:23.) The Court subsequently denied that motion. (May Order, ECF No. 75.) Following the trial and deliberations, a jury convicted Defendant on all counts. (Trial Tr. 486:24-488:11; Verdict, ECF No. 72.) Defendant filed the

instant Motion *pro se*[1] on July 6, 2026. (Def.'s Moving Br., ECF No. 78.) The Government opposed (Gov't's Opp'n Br., ECF No 82), and Defendant replied (Def.'s Reply Br., ECF No. 84).

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33(a), the Court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). Evidence is not viewed favorably to one side or the other—instead the Court "exercises its own judgment." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002); *see also United States v. Quiles*, 618 F.3d 383, 390 (3d Cir. 2010) (citation omitted) ("A determination of whether it should grant a new trial is left to the discretion of a district court.").

A district court "can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (internal quotation marks and citation omitted). A new trial is required when evidentiary errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (internal quotation marks and citation omitted); *see also United States v. Amirnazmi*, 648 F. Supp. 2d 718, 719 (E.D. Pa. 2009), (explaining that a new trial will be granted "only if a defendant proves[:] (1) that error occurred at trial[;] and (2) that error had a substantial influence on the verdict" (citation omitted)), *aff'd*, 645 F.3d 564 (3d Cir. 2011). "[M]otions for a new trial based on the weight of the evidence are not favored." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

---

[1] Defendant was represented by counsel at trial. After trial, Defendant requested to proceed *pro se*. (*See* Text Order, ECF 80.) The Court, accordingly, conducted a *Faretta* hearing (*Faretta* Hr'g Minute Entry, ECF No. 83), before granting Defendant's request to proceed *pro se* (*id.*).

Moreover, Federal Rule of Criminal Procedure 33 motions are "granted sparingly and only in exceptional cases." *Silveus*, 542 F.3d at 1005 (internal quotation marks and citation omitted).

## III. DISCUSSION

Defendant argues that he is entitled to a new trial because: (1) the Summary Charts did not fairly represent the underlying records "at the decisive point"; and (2) Pohar's attribution opinion was specialized-knowledge testimony without the qualification, disclosure, or reliability screening the Federal Rules of Criminal Procedure require. (Def.'s Moving Br. 13-22.)

### A. The Summary Charts were Accurate and Properly Admitted

Defendant first contends that page ten of the Summary Charts had material errors. (Def.'s Moving Br. 13-14.) Specifically, Defendant argues that the DocuSign signing event related to one of the loan applications which was attributable to Defendant's iPhone on page ten of the Summary Charts and a separate loan-agreement reflected in Exhibit 112-B both bore the exact same time stamp. (*Id.*)

As a threshold matter, Defendant's arguments about the Summary Charts are waived "because he did not object to the admissibility . . . of the evidence" at trial. *United States v. Copper*, No. 24-88, 2025 WL 2109348, at *9 (E.D. Pa. July 25, 2025); *United States v. Sharif*, No. 23-630, 2024 WL 4202676, at *2 (D.N.J. Sep. 16, 2024) (denying defendant's hearsay arguments on a Federal Rule of Criminal Procedure 29 motion where, among other things, defendant "did not raise any objection to the potential evidence at issue during trial"). Given Defendant's *pro se* status, however, the Court considers his arguments on the merits.

Here, the Court finds that the Summary Charts accurately summarized the relevant evidence for the jury and that, to the extent there was a mistake on the time stamp, it does not warrant a new trial. First, the Summary Charts were proper summary evidence. Pursuant to Federal

Rule of Evidence 1006, a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." *Cartee-Haring v. Cent. Bucks Sch. Dist.*, No. 20-1995, 2024 WL 3633684, at *1 (E.D. Pa. July 23, 2024) (quoting Fed. R. Evid. 1006). "The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." *Id.* Here, Defendant had an opportunity to review the Summary Charts and underlying evidence in advance of trial, the underlying evidence was admitted by stipulation, and the Summary Charts were admitted without objection. (Gov't's Exs. 700, 701; Def.'s Moving Br. 10 (explaining that the Summary Charts were "admitted without objection").)

Second, Pohar specifically testified that he was called to summarize voluminous evidence efficiently for the jury and explained his review of the records in developing the Summary Charts. (Trial Tr. 160:4-162:4.) Third, the Court gave clear instructions to the jury regarding the Summary Charts. (*See id.* at 419:18-21 ("If the charts and summaries do not correctly reflect the evidence in the case, you should disregard them and determine the facts from the underlying evidence.").)

Fourth, the Summary Charts showed that Defendant's iPhone was connected to the same IP addresses as captured in the submission of the loan documents. (*See generally* Summary Charts.) Moreover, during cross examination of Pohar and in summation, Defense Counsel challenged the accuracy and significance of the IP addresses and the Summary Charts and advanced the same arguments Defendant reiterates now in his Motion. (*See* Trial Tr. 303:2-304:7 (Defense Counsel cross-examining Pohar about the DocuSign timestamp and the EIDL application submission bearing the same timestamp), 452:12-457:11 (arguing that the Government did not

meet its burden in showing the veracity of the IP address evidence submitted).) The jury disagreed, and Defendant's arguments go to the weight of the evidence and not its admissibility.

Fifth, the Summary Charts were just some of evidence against Defendant that the jury considered. For example, some of the other facts in evidence connecting Defendant to the submission of the fraudulent applications include: (1) Defendant's personal identifying information listed on the loan applications, including his name, address, phone number, and email address (Trial Tr. 170:9-22, 181:3-182:14, 237:11-239:19); (2) Defendant's passport card was submitted with loan applications (*id.* at 184:20-185:1, 221:14-22); (3) communications to lenders were sent from email addresses and phone numbers that Defendant controlled (*id.* at 197:16-201:10; 224:16-227:6; Gov't's Exs. 100-A, 100-C, 100-D, 100-H, 100-I, 100-J, 100-K, 100-L); (4) Defendant controlled all of the companies that submitted the fraudulent applications (Trial Tr. 172:21-173:22); (5) Defendant controlled all of the bank accounts that received the proceeds from the loan applications (*id.* at 179:13-180:11; 204:13-206:10; 216:18-217:19; 230:7-231:13; 248:7-18); and (6) DocuSign signatures on the applications captured email addresses subscribed to Defendant (*id.* at 201:19-202:12; 215:6-216:16; 227:11-228:2).

The Court, accordingly, finds that even if there was an error on page ten of the Summary Charts, this is not an exceptional case, and the interest of justice does not require a new trial based on the Summary Charts evidence. The Court, therefore, finds that Defendant is not entitled to a new trial based on the introduction and use of the Summary Charts at trial.

### B. Pohar's Testimony was not Improper Expert Opinion under Federal Rule[2] of Evidence 702

Defendant next argues that he is entitled to a new trial because Pohar's testimony was improper opinion evidence that required special knowledge and was admitted without the qualifications, disclosure, or reliability screening that the Rules require. (Def.'s Moving Br. 15-22.) Again, as a threshold matter, Defendant's arguments about Pohar's testimony are waived "because he did not object to the admissibility . . . of [Pohar's testimony]" at trial. *Copper*, 2025 WL 2109348, at *9; *Sharif*, 2024 WL 4202676, at *2 (denying defendant's hearsay arguments where, among other things, defendant "did not raise any objection to the potential evidence at issue during trial"). Given Defendant's *pro se* status, however, the Court considers his arguments on the merits.

Rule 701 provides that if a witness does not testify as an expert, opinion testimony must be: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Third Circuit has explained that it "will not reverse a district court's decision to admit lay opinion testimony unless no reasonable person would adopt [its] view" because "the modern trend is away from skepticism of lay opinion evidence and toward greater admissibility." *United States v. Brown*, 754 F. App'x 86, 88 (3d Cir. 2018) (citation modified).

Here, the Court finds that Pohar's testimony was proper lay opinion testimony pursuant to Rule 701. It was rationally based upon his review of the records and his experience conducting fraud investigations and was helpful to the jury in understanding the evidence. *See United States v. Wadley*, No. 19-2931, 2022 WL 1011693, at *3 (3d Cir. Apr. 5, 2022) (affirming district court

---

[2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Evidence.

and finding that an FBI special agent's opinion testimony regarding summary charts of drug weight calculations was "not the exclusive . . . province of an expert"); *United States v. Georgiou*, 777 F.3d 125, 143-44 (3d Cir. 2015) (holding that lay witness testimony, which included "comparisons of stock quantities and prices" and "provided factual information and summaries of voluminous trading records that [the witness] had personally reviewed," did not "require prohibited scientific, technical, or other specialized knowledge" (citation modified)); *United States v. Bush*, 741 F. App'x 110, 119 (3d Cir. 2018) (holding that agent had personal knowledge to provide testimony under Rule 701 due to, among other things, his review of the evidence); *see also United States v. Sponaugle*, No. 22-2851, 2024 WL 4144069, at *4 (3d Cir. Sep. 11, 2024) ("[W]hen a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." (quoting *United States v. Fulton*, 837 F.3d 281, 301 (3d Cir. 2016))), *cert. denied*, 145 S. Ct. 1456 (2025).

Defendant's argument that Pohar's testimony fell outside of Rule 701's ambit because he was assigned to the case two months before trial specifically as a summary witness is also unavailing. (*See* Def.'s Moving Br. 10, 16, 21.) Pohar testified that he personally reviewed the evidence. (Trial Tr. 160:6-161:3, 269:7-8, 359:6-361:8.) Lay opinion testimony, moreover, "may incorporate reports or documents prepared by others where the witness still possess[es] the requisite personal knowledge or foundation to render his lay opinion admissible under [Rule 701]." *United States v. Holovacko*, No. 16-349, 2017 WL 3184175, at *3 (D.N.J. July 26, 2017) (internal quotations and citation omitted), *aff'd*, 781 F. App'x 100, 103 (3d Cir. 2019).

Defendant's argument that Pohar reached the ultimate conclusion when he testified that Defendant's "iPhone was used because they were connected at the same time" also fails because

that testimony was elicited by Defense Counsel on cross-examination. (Def.'s Moving Br. 10, 21; Trial Tr. 287:4-288:24); *see Georgiou*, 777 F.3d at 144 (holding that the "District Court also did not abuse its discretion in allowing [the summary witness's] remaining testimony on re-direct because [defense] counsel first elicited [the] opinion on cross-examination").

The Court, accordingly, finds that Pohar's testimony was proper lay witness testimony pursuant to Rule 701, this is not an exceptional case, and the interest of justice does not require a new trial based on such testimony.

## IV. CONCLUSION

For the reasons stated above, the Court denies Defendant's Motion. An Order consistent with this Memorandum Opinion will follow.

**Michael A. Shipp**
**United States District Judge**

**DATED:** August 28th, 2026