**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>NIKENSON JEAN MATHURIN,<br>Defendant. | Criminal No. 24-432 (MAS)<br>**MEMORANDUM ORDER** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Nikenson Jean Mathurin's ("Defendant") Motion for *Brady/Giglo* Review and Disclosure (the "Motion"). (Def.'s Mot., ECF No. 87.) The United States of America (the "Government") opposed (Gov't's Opp'n Br., ECF No. 96), and Defendant filed a reply (Def.'s Reply Br., ECF No. 101).[1] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1.

In the Motion, Defendant seeks discovery of materials related to: (1) the State of New Jersey's (the "State") investigation and prosecution of Defendant in connection with a fraudulent title scheme; and (2) the State authorities' seizure of Defendant's allegedly stolen vehicle and its contents. (*See generally* Def.'s Moving Br., ECF No. 87.) Defendant contends that materials from those investigations were shared with the Government and may therefore implicate the Government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and

[1] The Court notes that Defendant's filing of the Reply Brief was untimely per the Court's September 10, 2026, Order denying any extension of time to file a reply in further support of the Motion. (*See* ECF No. 97.)

*Giglio v. United States*, 405 U.S. 150 (1972). (*See* Def.'s Moving Br.) To confirm whether those disclosure obligations are applicable here, Defendant seeks "phased relief" in the form of: (1) "immediate preservation"; (2) "a sworn identification of the agencies, custodians, case files, and repositories reviewed"; (3) "Government review and disclosure of favorable information material to guilt or punishment"; (4) "targeted *in camera* inspection of identified disputes"; and (5) "a limited hearing only if material factual questions remain." (*Id.* at 5.)

Discovery in federal criminal cases is limited under Federal Rule of Criminal Procedure 16(a),[2] "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 67-68 (3d Cir. 1994). *Brady* prescribes the Government's obligations under the due process clause. 373 U.S. at 87. Specifically, the Government has an affirmative duty to disclose all potentially exculpatory evidence to a defendant "where the evidence is material either to guilt or to punishment." *Id.* The duty extends to evidence relating to the credibility of witnesses testifying on the Government's behalf. *Giglio*, 405 U.S. at 154; *see also United States v. Coles*, 511 F. Supp. 3d 566, 576 (M.D. Pa. 2021) (noting that *Giglio* evidence "is a subset of *Brady* material insofar as it addresses situations in which certain evidence about a witness's credibility or motivation to testify exists").

To that end, "a *Brady* violation may be found despite a prosecutor's ignorance of impeachment evidence . . . when the withheld evidence is under the control of a [S]tate instrumentality closely aligned with the prosecution." *United States v. Risha*, 445 F.3d 298, 306 (3d Cir. 2006) (citation omitted); *see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (instructing that prosecutors generally must "learn of any favorable evidence known to the others

---

[2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Criminal Procedure.

acting on the government's behalf"). The obligation ceases, however, if the "information [is] possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003) (quoting *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)).

Defendant asserts that two federal agencies—the Federal Housing Finance Agency's Office of Inspector General ("FHFA-OIG") and the Internal Revenue Service's Criminal Investigation agency ("IRS-CI")—acted on the Government's behalf because "both agencies participated in [Defendant's] federal arrest." (Def.'s Moving Br. 4, 11.) Defendant also contends that, as revealed by previously produced documents, the State and the Government had a "sustained, substantive, and reciprocal investigative relationship" leading to pending charges against Defendant by the New Jersey Attorney General's Office ("NJAGO"), a traffic stop carried out by New Jersey State Police ("NJSP"), and a search and seizure of Defendant's vehicle involving the Essex County Prosecutor's Office ("ECPO"). (*Id.* at 12, 17-18, 23-24; *see also* Ex. 12 to Def.'s Moving Br., ECF No. 87-18; Ex. 15 to Def.'s Moving Br., ECF No. 87-21.) These relationships, Defendant argues, warrant agency-specific inquiries and sworn statements to determine whether the agencies were considered part of the Government's "prosecution team." (*Id.* at 22-23.) The Government counters that the State investigations are "entirely unrelated to the COVID-19 relief fraud scheme for which the Defendant was tried and convicted here," and that it has no obligation to disclose materials "regarding the [S]tate's unrelated investigation[s]." (Gov't's Opp'n Br. 4.)

The Court agrees with the Government: the subject-matter of the State investigations are unrelated to the instant prosecution. (*See id.*) As the Government explained, the underlying case is about Defendant's participation in a fraudulent scheme regarding COVID-19 relief funds, and the

State case involves a title fraud scheme. (*See id.*) Defendant acknowledges these distinctions, stating that "[f]ederal involvement appears at the origin of two *distinct* state proceedings against [Defendant]," including the "*separate* title-fraud indictment." (Def.'s Moving Br. 17 (emphasis added).) Defendant's arguments that the State, FHFA-OIG, and IRS-CI were part of the Government's prosecution efforts read as mere speculation. (*See id.* at 14 ("The sequence is sufficiently unusual to warrant factual development, but *the present record does not establish federal initiation, fabrication, or bad faith*." (emphasis added)); *id.* at 18 (noting that "[Defendant] does not contend that the . . . [state] indictment, standing alone, prove[s] retaliation or federal orchestration" and instead, contends that the alleged FHFA[-OIG] involvement "requires disclosures of the communications showing whether, and to what extent, federal personnel influenced the initiation, timing, execution, or continuation of either state matter.").) "That speculation is insufficient justification for the Court to order the [G]overnment to produce the material that Defendant asserts is subject to *Brady*." *United States v. Wolff*, No. 11-719, 2013 WL 646204, at *6 (D.N.J. Feb. 20, 2013) (citing *United States v. Am. Radiator & Sanitary Corp.*, 433 F.2d 174, 202 (3d Cir. 1970)).[3]

Moreover, the Government represented that it has produced to Defendant all materials that fall within its obligations under Rule 16, *Brady*, and *Giglio*, and has further represented that it "will comply with" its "continuing obligations . . . as to any exculpatory material relevant to this matter that comes into its possession." (Gov't's Opp'n Br. 3-4.) The Court is satisfied with this

---

[3] Even if an agent from FHFA-OIG, for example, referred information regarding Defendant to State authorities, without more than Defendant's mere speculation, the Court has no meaningful reason to find that FHFA-OIG as an agency acted on the Government's behalf such that *Brady* obligations are implicated. *See United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("[T]hat other agents in the DOL participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team.").

representation and finds it was made in good faith. To the extent that Defendant seeks information contained within the Government's previous document productions, the Court notes that the Government is under no obligation to direct Defendant to that information. *See United States v. Farese*, No. 21-877, 2023 WL 6795083, at *2 (D.N.J. Oct. 12, 2023) ("[A]bsent such bad faith or concealment, there is no duty to help the defense identify and analyze which items may be considered exculpatory.").

The Government has further represented—as it did in its correspondence to Defendant's former counsel on March 9, 2026 (Ex. A to Gov't's Opp'n Br., ECF No. 96-1)—that it has none of the items that NJSP seized from Defendant's vehicle in its possession.[4] This Court cannot—and will not—order the Government to produce materials that are neither within the Government's possession and control nor relevant to the underlying federal offense for which a jury convicted Defendant. *See Hollman v. Wilson*, 158 F.3d 177, 180 (3d Cir. 1998) ("[T]he government is only 'obligated to produce . . . evidence actually or constructively in its possession or accessible to it.'" (citation modified)); *see also Pelullo*, 399 F.3d at 217 (noting the Government is not required "to obtain and disclose all information in the possession of other arms of the Government that are not involved in the particular prosecution" (citation modified)).

Even if the requested records were relevant to Defendant's federal conviction or were in the Government's possession or control, Defendant must also persuade the Court of their materiality. *Brady*, 373 U.S. at 87. The "touchstone of materiality" for *Brady* and *Giglio* purposes is whether a "'reasonable probability' of a different result" exists, which is shown when the suppressed evidence "undermines the confidence in the outcome of the *trial*." *See Kyles*, 514 U.S.

---

[4] The Court further notes that Defendant has admitted that "[t]he Essex County Prosecutor's Office retains the majority of his belongings." (Def.'s Moving Br. 17.)

at 434 (emphasis added) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Defendant fails to make—let alone attempt to make—such a showing. (*See generally* Def.'s Moving Br.) Instead, Defendant argues that the requested records are material to determining the extent to which the State assisted the Government in its prosecution of Defendant's federal case, which in turn might reveal exculpatory evidence. (*Id.* at 25-26.) Defendant also contends that the records are material to the sentencing factors this Court must consider under 18 U.S.C. § 3553. (*Id.* at 26-27.) As neither argument addresses the "touchstone" question of whether, or how, the requested records "undermine[] the confidence" in the verdict reached by the jury after a four-day trial, this Court is not convinced that those requested records are material to this case. *See Kyles*, 514 U.S. at 434.

Defendant's arguments, individually and taken together, are insufficient to overcome the limitations placed on discovery in criminal matters. The Court, accordingly, denies the requests set forth in Defendant's Motion.

**IT IS,** on this 28th day of September 2026, **ORDERED** that:

1. Defendant's Motion (ECF No. 87) is **DENIED.**

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE